UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS JAMES MORGAN-DEROSIER,<br><br>Defendant. | Cr. No. 3:22-cr-5-PDW<br><br>**DEFENDANT'S POST-HEARING BRIEF** |

Defendant, Nicholas James Morgan-Derosier reasserts the arguments

presented in his previous briefs. Additionally, he provides the following

supplemental briefing. The evidence in this case should be suppressed.

**ARGUMENT**

**A.      The warrant was overbroad. There was no probable cause nexus between the items to be searched and evidence of business crimes.**

The Court must determine whether there was probable cause based on

information included in the warrant application. "In ruling on a motion to suppress,

probable cause is determined based on 'the information before the issuing judicial

officer.'" *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United

States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).

The warrant authorized the government to search a broad swath of Mr.

Morgan-Derosier's electronic data. But there was no probable cause to believe

evidence of business crimes would be found in image files or in files that predated

October 2019. Nor was there probable cause to believe "contraband, fruits of crime, or other items illegally possessed" would be found on any of the electronic devices.

**1.      Officers lacked probable cause to believe Mr. Morgan-Derosier stored business records as images or videos, or that any files predated 15 October 2019.**

There was no probable cause nexus for officers to search Mr. Morgan-Derosier's images and videos for business records. Det. Buzzo knew Mr. Morgan-Derosier used QuickBooks, had a business website, phone number and email address, and had posted job advertisements online. But the warrant was not limited to those items. The warrant allowed officers to comb through every type of digital file, on all electronic devices in the home.

The few references to photographs in the affidavit are not enough to limit the breadth of the warrant. Det. Buzzo's affidavit states, "Photographs, videos, and other records that were previously stored in boxes are now collected as digital images and files that can be stored and maintained on electronic media." On redirect examination, the government asked Det. Buzzo, based on his training and experience, whether "individuals take photographs of business documents." But whether people generally take photographs of their records was not included in the warrant or affidavit, and not presented to the magistrate as a basis for probable cause. Det. Buzzo never identified any reason, specific to the investigation, he thought Mr. Morgan-Derosier had images of his business documents.

An illustration shows why such a broad warrant is concerning. Imagine a person oversleeps an alarm and misses a court appearance on June 1, 2023. Law

enforcement learns the person owns a phone. An officer requests a search warrant with an attached Exhibit A. Exhibit A identifies the crime under investigation as failure to appear, a violation of N.D. Cent. Code § 12.1-08-05. The officer seeks evidence pertaining to the possession, receipt, or distribution of visual depictions of the person's whereabouts the morning of court.

In the affidavit, the officer explains his training and experience. He asserts images and videos are likely to be date-stamped and are evidence the person was not at court. The images could depict where the person was, possibly eliminating defenses or legal excuses for the absence. The officer knows people often post photographs to social media or send them to family and friends via email or text messages. The officer knows criminals often delete data or conceal file names. So, he needs to search the entire device, including all unallocated space, and files from all dates, to find all incriminating videos, photos, texts, and emails that may have been deleted. The officer knows electronic searches are complex. Therefore, he asserts, officers need permission to use any data analysis methods they deem appropriate.

Such a broad search is antithetical to the Fourth Amendment's privacy protections. Even though the officer named a specific crime, he has not articulated probable cause to believe evidence of that crime could be found in any file type on the suspect's phone. The officer has given no reason to think the person took photos of where they were on June 1, or if they sent those photos to anyone. He has requested access to files that could predate the offense by years. Under the plain terms of the warrant, the officer can review every text message, every email, every

photograph, every GPS location ping, every *thing* that was ever stored on that phone. All for an offense that occurred on a discrete date and time. The officer has requested access to a broad swath of personal data, more information, in fact, "than the most exhaustive search of a house." *Riley v. California*, 573 U.S. 373, 396 (2014). It is nothing less than a general warrant.

Yet that is the kind of warrant that was authorized in this case. Although Det. Buzzo mentioned business crimes in Exhibit A, the warrant allowed him to search every file on every device in the home, deleted or not. It authorized officers to search for all "visual depictions" just because "[p]hotographs, videos, and other records that were previously stored in boxes are now collected as digital images and files." That assertion was not specific to the case and it was not supported by any facts to explain why Det. Buzzo thought Mr. Morgan-Derosier had visual depictions related to his business.

Det. Buzzo also did not limit his search to records created, accessed, or modified after the dates he believed the offenses occurred. Det. Buzzo knew the judicial order was issued on 15 October 2019. But even though he knew the first date that Mr. Morgan-Derosier could have violated the order, he did not limit the warrant by date. This is different from the warrants Det. Buzzo served on Gate City Bank and United Valley Bank. Those warrants were limited to records from October 2019. In fact, Det. Freeman did not even know why 15 October 2019, was an important date in this case. The warrant for Mr. Morgan-Derosier's devices

> authorized the police to seize the entirety of the [electronic devices]
> and rummage through every conceivable bit of data, regardless of

whether it bore any relevance whatsoever to the criminal activity at issue. Simply put, the warrant told the police to take everything, and they did. As such, the warrant was overbroad in every respect.

*United States v. Winn*, 79 F. Supp. 3d 904, 922 (S.D. Ill. 2015). Without limits to the type of data that could be seized, the warrant was overbroad.

If there was no probable cause for law enforcement to search for images, then the search of Mr. Morgan-Derosier's electronic devices was unconstitutional. Det. Freeman justified her failure to conduct a methodical search—such as using a key word search—by the fact that such a search would not produce the relevant images. Images were the focus of the search. The warrant did not describe any nexus between the things to be searched, all files on Mr. Morgan-Derosier's devices, to the evidence to be seized, evidence of business crimes after 15 October 2019. The warrant was overbroad.

### 2. Officers did not have probable cause to search for contraband or "other items illegally possessed."

The search warrant permitted a search for "contraband, fruits of crime, or other items illegally possessed." The warrant did not establish probable cause to believe devices contained contraband "or other items illegally possessed."

Det. Buzzo sought and received a warrant to investigate specific business crimes. He had probable cause to believe Mr. Morgan-Derosier was operating a business when he was not allowed to do so, and that he had not completed work he had been paid to complete. To investigate those offenses, Det. Buzzo wanted to review Mr. Morgan-Derosier's business records.

Business records are not contraband. QuickBooks software is not contraband. It is not illegal to possess a business phone number or email address. It would not be a violation of the court order to merely possess these things—the order prohibited Mr. Morgan-Derosier from operating a business, not from owning the software that helped him do so. Det. Buzzo provided no reason to believe Mr. Morgan-Derosier possessed contraband. At most, these business records could only have been "evidence of a crime," or "fruits of a crime."

Det. Buzzo did not articulate any reason why the devices would contain contraband related to his alleged business crimes. There was no probable cause nexus to contraband. The warrant was overbroad.

**B.     Officers would not have inevitably discovered the evidence because there was no ongoing investigation independent of the warrant.**

The government has argued that any unconstitutionally acquired evidence is, nonetheless, admissible as inevitable discovery. "The inevitable-discovery doctrine . . . applies if the evidence would have been acquired by lawful means had the unlawful search not occurred but in fact *was not* acquired (or reacquired) by these lawful means." *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020). There is some ambiguity in the Eighth Circuit whether the inquiry is one or two steps. *Id.* at 1038–39. That ambiguity has no effect on this case because the government fails at step one. *See id.* The evidence would not have been discovered by lawful means in the absence of police misconduct.

Det. Freeman had no lawful means to search Mr. Morgan-Derosier's devices, absent the unconstitutional warrant. She testified she did not have probable cause

to search for child pornography until she opened files on the thumb drive. That was not for lack of trying: twice before, Det. Freeman investigated Mr. Morgan-Derosier. Without Det. Buzzo's warrant, she would not have found child pornography. It was far from inevitable that officers would have found the evidence absent the illegal search. The inevitable discovery doctrine does not save this evidence.

**C.   The good-faith exception is inapplicable.**

Because the warrant and its execution violated the Fourth Amendment, all evidence obtained as a result should be suppressed. *See United States v. Eggerson*, 999 F.3d 1121, 1124 (8th Cir. 2021). But where a search warrant is defective or invalid, the good faith exception may apply. *Id.* (citing *United States v. Leon*, 468 U.S. 897, 906 (1984)). Under *Leon*, "if an officer (1) obtains a search warrant (2) that appears properly issued on its face and (3) executes it within its scope and with objective good faith reliance on the warrant's validity, then a defect in the probable cause analysis undergirding that warrant will not cause evidence to be suppressed." *Id.* (quoting *Leon*, 468 U.S. at 922). "The good-faith inquiry is confined to the objectively ascertainable question [of] whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020); *see United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) ("*Leon* creates an exception to the exclusionary rule when officers have acted in reasonable reliance on the ruling of a judge or magistrate."). Even though Det. Buzzo obtained a warrant, the warrant was unreasonably sought and executed.

Failing to include time limits on the warrant was not an accident. Before applying for the search warrant, Det. Buzzo executed a warrant for records from United Valley Bank. That warrant authorized seizure of records from 1 October 2019. After the residence search, Det. Buzzo obtained a similar, date-restricted warrant for Gate City Bank. He knew how to draft a warrant tailored to relevant dates. But he chose not to with the search of the residence.

Every offense in Exhibit A is date sensitive. Violation of a judicial order and contracting without a license are tied to 15 October 2019—the date a state court enjoined Mr. Morgan-Derosier and his business from operating. Construction fraud, which related to projects dated 20 April 2020, required proof projects were not completed within a certain number of days. *See* N.D. Cent. Code § 43-07-02(3)(c).

Instead, Det. Buzzo used a boiler plate child pornography warrant to write Exhibit A and his affidavit. Exhibit A sought anything "pertaining to the *possession, receipt or distribution of visual depictions*" of job sites, projects, etc. *Visual depiction* is a federal term used to define child pornography. *See* 18 U.S.C. §§ 2256(5) (defining visual depictions), 2256(b) (defining child pornography). It is not, as Det. Freeman testified, a term describing "receipts in PDF" format.

Like visual depiction, *possession*, *receipt,* and *distribution* are words associated with federal child pornography statutes. Federal law makes it a crime to receive or distribute visual depictions of child pornography, *id.* § 2252(a)(2), or to possess visual depictions of child pornography, *id.* § 2252(a)(4)(B). Those are not words associated with contempt, breach of contract, or working without a license.

Det. Freeman's child-pornography warrant used the same language with one exception: "Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of visual depictions of *minors engaged in sexually explicit conduct.*" Both Det. Buzzo and Det. Freeman testified that they separately drafted that language for their respective warrants. Det. Freeman noted she used that language to obtain child pornography warrants before September 2020.[1]

That shared language used in Det. Buzzo's and Det. Freeman's documents is often used to support applications for search warrants for *child pornography*:

- *United States v. Williamson*, 439 F.3d 1125, 1128 (9th Cir. 2006) ("correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct")

- *United States v. Potts*, 586 F.3d 823, 827 (10th Cir. 2009) (correspondence "pertaining to possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct")

- Appellant's Br., *State v. Forker*, 2005 WL 6932482, at *4 (Or. Ct. App 2005) (correspondence "pertaining to the possession, receipt or distribution of visual depictions of children engaged in sexually explicit conduct")

- Appellant's Br., *United States v. Allen*, 2009 WL 7170951, at *11 (5th Cir. 2009) (information or correspondence "pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct")

- Aff. in support of search warrant, *State v. Gerszewski*, 18-2019-CR-00702, Index #14 at ¶ 15 (D. Ct. Grand Forks Cty, Apr. 12, 2019) ("information, correspondence, records, documents or other materials pertaining to the

---

[1] *See State v. Gerszewski*, 18-2019-CR-00702, Index #14 ((D. Ct. Grand Forks Cty, Apr. 12, 2019).

possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct.")

- Aff. in support of search warrant, *State v. Whaley*, 18-2015-CR-02501, Index #11 at ¶ 27 (D. Ct. Grand Forks Cty, Dec. 1, 2015) ("Information, correspondence, records, documents, or other materials pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct.")

Each case describes warrant-application language for child pornography and not business records.

And it's not just Exhibit A. Det. Buzzo's affidavit copies boilerplate language from child pornography warrants used to obtain expansive searches of electronic devices. *Compare* Det. Buzzo's ¶ 17 *with* Det. Freeman's ¶ 7; Det. Buzzo's ¶ 19 *with* Det. Freeman's ¶ 11; Det. Buzzo's ¶ 20 *with* Det. Freeman's ¶ 12. To justify an unlimited search of any seized device, Det. Buzzo used a child pornography search warrant affidavit—even though he had never investigated such a case.

It is beyond dispute that Det. Buzzo sought more than business records. Even if the Court concludes the business warrant was not a ruse to further a child pornography investigation, the fact Det. Buzzo put business terms into a child pornography affidavit shows he was not negligent or reckless. He knew what he was doing. The warrant, therefore, was not obtained in good faith.

Not only was the warrant not obtained in good faith, executing officers did not reasonably rely on the warrant in executing it. The computer-generated warrant let officers search for evidence of any crime and contraband. Exhibit A provided an unlimited list of electronic devices and data for evidence of contempt of court,

contracting without a license, and construction fraud. Besides Det. Buzzo, no one

read the affidavit, and it is uncertain whether any officer knew what constituted

construction fraud.

The government and officers failed to understand construction fraud as

alleged. Throughout the evidentiary hearing, the government referred to "fraud

investigations," "fraud cases," "fraud-related charges," and "fraudulent activity." SA

Casetta believed the search warrant was for fraud offenses. Det. Freeman

associated failing to complete a project with outright fraud. But Det. Buzzo's

affidavit stated only that Mr. Morgan-Derosier had not completed landscaping

projects. To commit construction fraud, a contractor fails to perform work within a

certain time frame. *See* N.D. Cent. Code § 43-07-02(3).[2] In this context, it is a

criminal sanction for a contract dispute and not ordinary fraud. The investigation

was related to unfinished projects dated 20 April 2020. Nothing suggested

construction fraud occurred before then. And nothing suggested the possibility of

hidden, renamed, or deleted files to conceal "fraudulent activity."

Soon after the search began, Det. Buzzo walked outside and remained there

while ICAC and HSI officers searched the residence for electronic devices,

neglecting the actual business documents in plain sight. No one inside the house

read the affidavit and they knew little about the investigation. The officers relied on

---

[2] Construction fraud also contains a divisible intentional-deception offense, N.D.
Cent. Code § 43-07-02(3)(a), but that offense is neither alleged nor can it be inferred
from Det. Buzzo's affidavit.

a warrant that allowed the search and seizure of any electronic object. Standing

outside, literally and figuratively, Det. Buzzo turned his back on the search.

He did not examine a single seized device. That task was assigned to Det.

Freeman—who did not read the affidavit and had no idea what she was looking for.

*See United States v. Armstrong*, 2022 WL 17417901, at \*19 (D. Minn. Sept. 2, 2022)

(lack of good faith where an officer who executed a search based on an overbroad

warrant did not author the warrant affidavit); *see also United States v. Henderson*,

416 F.3d 686, 695 (8th Cir. 2005) (good faith where officer who requested warranted

executed it). She was not looking for business records. Det. Freeman had a cybertip

investigation into Mr. Morgan-Derosier that had fizzled months before. At the time

of the search, she was investigating sexual abuse allegations based on information

she received from investigators in Minnesota. Those allegations were "gross," and it

had her attention. During the residence search, she learned Ms. Anderson told SA

Casetta Mr. Morgan-Derosier "raped his nephew." She also learned other

roommates told SA Casetta there was child pornography on a Lexar thumb drive

seized from a safe in Mr. Morgan-Derosier's bedroom.

Det. Freeman wasted little time to search the Lexar drive. Despite three

other thumb drives, she first plugged the Lexar drive into a computer. In a rush to

view it, she plugged it into her computer without using a write-blocker, which

permanently altered data on the drive. She immediately looked inside a folder

called "Mega." Det. Freeman knew Mega is a cloud-based platform that allows for

end-to-end encryption and is used by child-pornography traffickers. And she

suspected the folder contained child pornography.[3] But she did not believe she had

probable cause for a warrant. She located a file called "Klein 33." She knew no

significance of the name Klein because she chose not to read Det. Buzzo's affidavit,

which did not indicate anyone with that name was relevant to the case. And she did

not know of any clients associated with Mr. Morgan-Derosier. "Klein 33" was an

image, not a PDF, text document, or QuickBooks file. After opening it, she

recognized it to be child pornography. Before getting a separate warrant, based on

advice of a prosecutor, she kept looking for more child pornography. She then

opened "Klein 35," which was also child pornography. That alone was unreasonable.

*See United States v. Suing*, 712 F.3d 1209, 1212–13 (8th Cir. 2013).

Det. Freeman's search was unreasonable. The affidavit, which Det. Freeman

did not read, convinced the issuing magistrate to allow unfettered access to every

part of every device in part because Det. Buzzo swore searches of electronic devices

involved highly technical, scientific processes requiring expert skill in a properly

controlled environment. So, Det. Buzzo convinced the issuing magistrate that

agents should be able to do anything with the devices with the expectation that a

computer expert would employ "whatever data analysis" technique were necessary.

Rummaging through the "Mega" folder was not a technical, scientific procedure, and

it did not require expert skill. Failing to use a write-blocker, and failing to image

the Lexar drive before searching, defied the techniques sworn necessary in the

affidavit. Rummaging was not relying on the warrant. It was unreasonable.

---

[3] Doc. 102, p. 110.

Officers did not reasonably rely on the warrant and *Leon* should not apply. Still, several *Leon* exceptions render good faith inapplicable. *See United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (listing exceptions). First, for the reasons stated above, the warrant was so facially deficient that reasonable executing officers could not presume it to be valid. Second, Det. Buzzo's affidavit recklessly misled the issuing magistrate because he used child pornography language to seize business records to search files and dates for which there was no probable cause.

Third, good faith is lacking because of an abandoned judicial role. The computer-generated warrant system failed to assure the issuing magistrate carefully considered the overbroad nature of the objects to be searched given the crimes alleged. And there's no indication the issuing magistrate reviewed the warrant that allowed officers to search for contraband. Based on the computer-generated warrant system, and the extreme overbreadth of the warrant, it is apparent the issuing magistrate abandoned her judicial role. *See Winn*, 79 F. Supp. 3d at 924 (finding it impossible to conclude the issuing magistrate adequately reviewed the warrant application signing off on a facially overbroad nature of list of items to be searched and "its utter disconnect from the type of crime at issue and the facts alleged…"). Good faith cannot save the warrant.

## CONCLUSION

All evidence should be suppressed. The police misconduct exceeds mere negligence; it was reckless, if not intentional. Suppression has a significant deterring function. In the digital era, it is more important than ever that warrants

14

be narrowly tailored. The government has likened digital searches to a search of a parcel, but that argument has been rejected by the Supreme Court. *See Riley*, 573 U.S. at 392-93 ("Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse…").

As the Supreme Court noted, digital evidence must be handled with care. Excusing this warrant will greenlight digital general warrants going forward. The Founders' opposition to general warrants not only inspired the Fourth Amendment but sparked the revolution that created this Country. *See id*. at 403. Suppression is necessary.

Dated this 25th day of May, 2023.

Respectfully submitted,

JASON J. TUPMAN
Federal Public Defender
By:

*/s/   Christopher P. Bellmore*
Christopher P. Bellmore
Anne M. Carter
Assistant Federal Public Defenders
Attorneys for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
112 Roberts Street North, Suite 200
Fargo, ND 58102
Telephone: 701-239-5111; Facsimile:  701-239-5098
filinguser_SDND@fd.org