UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>NICHOLAS JAMES MORGAN-DEROSIER,<br><br>                    Defendant. | Cr. No. 3:22-cr-5-PDW<br><br>**DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

Defendant, Nicholas James Morgan-Derosier, objects to the Magistrate Judge's Report and Recommendation on his Motion to Suppress.[1] Mr. Morgan-Derosier objects to the Magistrate Judge's conclusions that (1) the warrant was sufficiently particular; (2) the warrant was not overbroad; (3) the warrant was executed in a reasonable manner; and (4) even if the warrant was defective, evidence should not be suppressed because officers relied on the warrant in good faith.

"The district judge must consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1).

The Court should reject the Report and Recommendation. The warrant was overbroad, and it was not particular. Officers then executed the defective warrant in

---

[1] Report and Recommendation ("R&R"), Doc. 122.

an unreasonable manner. The good faith exception does not save the evidence in this case. The evidence should be suppressed.

1.     **The warrant was not particular.**

Mr. Morgan-Derosier objects to the finding that the warrant particularly described the place to be searched and the person or things to be seized. The Fourth Amendment's particularity requirement prevents law enforcement from general rummaging. *United States v. Christie*, 717 F.3d 1156, 1164–65 (10th Cir. 2013). "The manifest purpose of this particularity requirement was to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.*

The Magistrate Judge found the warrant sufficiently particular. This was incorrect. The warrant lacked particularity because it had no limiting principle for the search. There are at least two reasons for this. First, the warrant identified no specific crimes or criminal conduct. The warrant itself authorized search for any "evidence of crime," "contraband, fruits of crime, or other items illegally possessed."[2] While the warrant incorporated Exhibit A—which referenced three crimes—the warrant only incorporated a list of items to be searched. Second, the warrant provided no time limits to the search. Without time restraints, the warrant

---

[2] Def. Ex. 6, Doc. 73-6.

authorized a limitless search through any electronic device found at the search location. Further, the warrant provided no limiting principle, which amounted to a general warrant.

### A.   The warrant did not incorporate Exhibit A's list of crimes.

The Magistrate Judge incorrectly concluded the warrant sufficiently incorporated Exhibit A,[3] which described three crimes: violation of a judicial order, contractor license required, and construction fraud.[4] The warrant lacked particularity because it authorized a search for evidence of any crime. On its face, the warrant authorized a search for evidence of a crime, contraband, fruits of crime, or other items illegally possessed.[5] It contained no reference to any specific offense or conduct. Instead, it only incorporated the items to be searched not the offenses.

The Magistrate Judge determined this interpretation was too narrow, stating the distinction between the warrant and Exhibit A eludes "practical accuracy" and employs hypertechnicality.[6] But the language used in the warrant specifically incorporated Exhibit A only for its list of items—and not the crimes. The Magistrate Judge found that to be a hypertechnical reading. However, the warrant clearly distinguished between items to be searched and the underlying crimes.

To support full incorporation, the Magistrate Judge cited three distinguishable cases. *See Andresen v. Maryland*, 427 U.S. 463, 466 (1976); *United*

---

[3] R&R at 27–28.
[4] *See* Def. Ex. 6.
[5] *Id.* at 1.
[6] R&R at 27–28.

*States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018); *United States v. Fiorito*, 640 F.3d 338 (8th Cir. 2011). In *Andresen*, the Supreme Court concluded a warrant met the particularity requirement because the specific crime—contained within the search warrant—guided general phrasing later within the actual warrant. *Andresen*, 427 U.S. at 480. The warrant did not involve language connected between the warrant and attached documents. *See id*. The lynchpin "in *Andresen* was the fact that the overly broad phrase appeared after a colon preceding the description of items to be seized." *United States v. Carson*, 520 F. App'x 874, 881 (11th Cir. 2013) (unpublished). Where an attachment stands alone, it is—by its own terms—not limited in scope "because no limiting clause precedes the more general clauses." *Id*. Similar to *Andresen*, in *Castro*, the warrant cited aggravated robbery as the crime along with citation to the penal code section. *Castro*, 881 F.3d at 964–65. And in *Fiorito*, the broad phrase of "entire files" was followed immediately by specific documents. *Fiorito*, 640 F.3d at 346–47. In *Andresen*, *Castro*, and *Fiorito*, a single document connected a specific phrase to a general one. This case is different because the broad, general descriptor was not in the same sentence—or even the same document—as the specific words that supposedly limited it. This case is more like *Carson*, because no stand-alone document connected "evidence of a crime" in the warrant to the crimes listed in Exhibit A. *See Carson,* 520 F. App'x at 881. Here, the broad phrase and specific list were not connected by a single document.

Moreover, the warrant did not incorporate the list of crimes. The warrant incorporated Exhibit A insofar as it described a list of *items* not criminal activity.[7] The warrant's only reference to criminal activity was "evidence of a crime," "contraband, fruits of crime, or other items illegally possessed."[8] The words incorporating Exhibit A did not mention criminal activity.[9] Instead, it specifically incorporated Exhibit A's list of items to be searched.[10]

Broad language within a warrant "must be given a practical, rather than a hypertechnical, interpretation." *See Fiorito*, 640 F.3d at 347. Here, the language is not broad. The warrant's incorporating phrase specifically separated items from crimes. If there is a hypertechnical interpretation, that's because the complexity and narrowness of the warrant's wording demands it. The warrant clearly incorporated items not crimes. A commonsense interpretation shows the warrant did not incorporate crimes. Therefore, the warrant lacks particularity.

**B.    The warrant lacked particularity because it contained no time limit for data to be searched.**

The warrant lacked particularity because it did not limit the time period for the search. The Magistrate Judge erred concluding otherwise. The warrant contained no limits on the dates of data to be searched. This allowed agents to rummage through limitless data. According to the Magistrate Judge, time limits are not required. *See United States v. Graham*, 2009 WL 1066048, at *8 (D. Minn. Apr.

---

[7] Def. Ex. 6.
[8] *See id.*
[9] *See id.*
[10] *See id.*

20, 2009) (citing *United States v. Grubbs*, 547 U.S. 90, 97 (2006)). Yet, several appellate courts have required time limits where such dates were available to officers. *See United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995); *United States v. Abrams*, 615 F.2d 541, 545 (1st Cir. 1980); *Wheeler v. State*, 135 A.3d 282, 304 (Del. 2016) (stating "the search and seizure should be appropriately narrowed to the relevant time period so as to mitigate the potential for unconstitutional exploratory rummaging"); *State v. Mansor*, 421 P.3d 323, 342 (Ore. 2018) (stating "when a time-based description of the information sought on a computer is relevant and available to the police, it ordinarily should be set out in the affidavit, and the warrant should include that description").

In *Graham*, the defendant raised a similar concern regarding the scope of digital data in a search warrant for business crimes. *Graham*, 2009 WL 1066048, at *8. But those crimes were fraud. *See id.* at *7–8. Here, they were not. Construction fraud is a misnomer.[11] As described in Det. Buzzo's affidavit,[12] Mr. Morgan-Derosier committed *construction fraud* by failing to perform after receiving payment.[13] Importantly, those instances involved just two projects dated 20 April 2020.[14] The

---

[11] *See* Doc. 109 at 11.

[12] Although Det. Buzzo's affidavit is irrelevant to determine particularity because it was not incorporated into the warrant, context of the investigation is helpful here. *See Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987) ("The affidavit, which provides the necessary limits, was not incorporated into the warrant nor was it even brought to the scene. An affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant.").

[13] Def. Ex. 5, Doc. 73-5 at 7–8; *see* N.D. Cent. Code § 43-07-02(3).

[14] Def. Ex. 5 at 7–8.

underlying evidence was based only on bare assertions without explanation why Mr. Morgan-Derosier failed to commence work on the projects.[15] On the other hand, in *Graham*, there was ample evidence the defendant engaged in pervasive fraud. *Id.* at *8.

With electronic data, a time limit refers not to the means of a search but to the types of files that may be searched. A time limit on data is easily discernible. Files have creation and last-modified dates. Those dates can be accessed without searching the substance of a file. Therefore, distinguishing files by dates falls squarely within a particularity analysis. Here, the earliest relevant date is 15 October 2019—the date Mr. Morgan-Derosier's business was enjoined from operation.[16] Therefore, Det. Buzzo, in drafting the warrant, was aware 15 October 2019 marked a distinction between relevant and irrelevant data.[17] The warrant's failure to separate data relevant to the investigation's purpose impermissibly let agents rummage through every device, which the Fourth Amendment forbids. Failing to distinguish between the types of evidence sought resulted in a warrant that lacked particularity and resulted in a general warrant.

---

[15] *Id.*

[16] *See id.*

[17] Again, Det. Buzzo's affidavit was not incorporated. The warrant does not mention 15 October 2019 or other dates of alleged criminal activity. Had the dates been included, the warrant would still lack particularity. Because the dates were not included, the lack of particularity is more obvious.

### C.     The warrant amounted to a general warrant because it contained no limiting principle.

The lack of time period and faulty incorporation discussed above are examples of the warrant's lack of particularity. They are signs of the same underlying problem: the lack of limiting features. *See United States v. Winn*, 79 F. Supp. 3d 904, 921 (S.D. Ill. 2015). The list of items provides no insight into how the items to be searched would be separated from irrelevant, legal, or otherwise constitutionally protected items or data. For example, a time limit would have distinguished between dates of the alleged offense—clearly defined by the 15 October 2019 injunction—and lawful business records beforehand. Instead, the warrant allowed a limitless search, letting the executing officer sift through unrelated items and data. Such a practice is unconstitutional.

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Marron v. United States*, 275 U.S. 192, 196 (1927). The warrant here left much to the officer's discretion.

In finding the warrant sufficiently particular, the Magistrate Judge ignored the realities of searching digital data. "In today's world, if any place or thing is especially vulnerable to a worrisome exploratory rummaging by the government, it may be our personal computers." *Christie*, 717 F.3d at 1164. "Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Riley v. California*, 573 U.S. 373, 393 (2014).

8

Cell phones and computer devices are not contraband. During a search, obvious contraband, such as weapons, drugs, and CSAM, can be identified and seized easily. But innocuous objects, such as digital data, require more effort to determine their incriminating nature. Therefore, data searches demand more particularity than searches for obvious contraband. *See United States v. Griffith*, 867 F.3d 1265, 1276 (D.C. Cir. 2017).

Here, the warrant authorized a search for all computer devices. It did not limit the search to business devices. Personal devices were subject to search, too. But the warrant lacked sufficient limiting features to prevent officers from rummaging through innocent data. Broadly describing state crimes to look for images and videos for payroll records provided no limitation.

A limiting feature available (but unused) was a self-defined protocol detailing the perimeters of the search. Search protocols are generally not required. S*ee United States v. Cartier*, 543 F.3d 442, 447–48 (8th Cir. 2008). But the degree of particularity required depends on "the circumstances of the case and on the type of items involved." *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999). A warrant should be "as particular as reasonably could be expected under the circumstances." *See United States v. Triumph Cap. Grp., Inc.*, 211 F.R.D. 31, 57 (D. Conn. 2002) (citing *Andresen*, 427 U.S. at 480, n.10). That means search protocols might be necessary. *See Cartier*, 543 F.3d at 447–48 (acknowledging sometimes, a "search methodology or strategy" may be necessary). Here, given the warrant's lack of specificity, protocols were necessary. The warrant put no limit on how officers would

separate data targeted to violation of a judicial order, contractor's license required, and construction fraud from other irrelevant data. To find evidence, the warrant unconstitutionally let officers rummage through every part of every device.[18] What they were looking for and how they looked for it were left to their discretion. The warrant lacked particularity.

## 2.   The warrant was overbroad.

Mr. Morgan-Derosier next objects to the finding that the warrant was not overbroad. The Magistrate Judge found that the warrant was not overbroad because there was probable cause to believe that evidence of business crimes could be found in files predating 15 October 2019, and in image and video files.[19]

The Court must determine whether there was probable cause based on information included in the warrant application. "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)); *see also United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021) ("When the issuing magistrate relies solely on a supporting affidavit in determining probable cause, . . . 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" (quoting *United States*

---

[18] Officers did exactly that. Immediately after seizing devices, Det. Freeman rummaged through a thumb drive. *See* Suppression Hearing Transcript ("Hrg. Trans.") Vol. II, Doc 111 at 287.

[19] R&R at 32–35.

*v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020))). "The police cannot rationalize a search *post hoc* on the basis of information they failed to set forth in their warrant application to a neutral magistrate." *Messerschmidt v. Millender*, 565 U.S. 535, 568 n. 8 (2012) (Sotomayor, J., dissenting). The Court cannot rely on explanations for probable cause that were only provided years after the search. *See id.*

The overbreadth doctrine is particularly important in the context of cell phone and computer searches because it limits government intrusion. The doctrine ensures officers only search areas of the device that they have probable cause to believe contain evidence of a crime. Without the overbreadth limitation, officers could easily find an excuse to invade all aspects of a person's privacy. An officer could search anywhere on a phone, for evidence of the most minor crime, because "[i]t would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." *Riley*, 573 U.S. at 399. The overbreadth doctrine ensures that officers are not given "unbridled discretion to rummage at will among a person's private effects." *Id.* (quoting *Arizona v. Gant*, 556 U.S. 332, 345 (2009)).

> **A.     There was no probable cause nexus to believe evidence of business crimes would be found in files that predated 15 October 2019.**

The warrant is overbroad because officers knew specific dates before which Mr. Morgan-Derosier could not have committed the crimes under investigation.

Despite knowing when the crimes took place, officers did not limit the search warrant to the applicable time frame.

> **i.   Officers must limit their search to a specific time frame when they know offenses could only have been committed during a certain period.**

The Magistrate Judge identified ambiguity in the case law on whether officers are required to include a time frame when they know evidence of a crime only exists during a certain period.[20] This Court should adopt the rule that, if officers know when a crime occurred, a warrant that is not limited to that period is overbroad. *See Abboud*, 438 F.3d at 576.

The time requirement satisfies common sense. The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The overbreadth doctrine specifically requires that there must be a probable cause connection between the alleged crimes and every place to be searched. *See United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009). Evidence of a crime will only exist near in time to when that crime occurred. Thus, if law enforcement officers know when a crime occurred, they only have probable cause to believe that evidence of that crime exists or existed around the time of the offense. Therefore, their search should be limited to that time.

---

[20] R&R at 31–32 (citing cases).

### ii. There was no probable cause to believe officers would find evidence that predated 15 October 2019.

There was no probable cause to believe that any of the offenses occurred before 15 October 2019. Mr. Morgan-Derosier was under investigation for three offenses: violation of a judicial order, contractor's license required, and construction fraud.[21] It is clear any violation of a judicial order could not have occurred before 15 October 2019, because the judicial order in question was issued on that date.[22] The Magistrate Judge found, however, that evidence of contractor's license required and construction fraud could have existed prior to 15 October 2019.

The Magistrate Judge did not explain why there was probable cause that evidence of construction fraud or contractor license required could have been found prior to October 2019.[23] Nor did the affidavit explain any reason to believe evidence of those crimes would have existed that early. Similarly, the government argues that evidence predating the judicial order could be relevant.[24] But these explanations were not included in the affidavit or presented to the issuing magistrate. Only the information available to the issuing magistrate can be considered in determining the existence of probable cause. *See Saddler*, 19 F.4th at 1039. The Court may look only to the information contained in the warrant and supporting documents. *See Roberts*, 975 F.3d at 713.

---

[21] Def. Ex. 5 at 11, ¶ 22.
[22] *See* Def. Ex. 1, Doc. 73-1.
[23] R&R at 32.
[24] Gov. Resp. Br., Doc. 77 at 24.

13

The affidavit did not articulate any probable cause to believe that evidence of construction fraud existed before the spring of 2020. Construction fraud has a distinct meaning under North Dakota law. In North Dakota, a person commits construction fraud if (a) he receives payment for construction using deception; (b) he receives payment to buy materials and does not pay the supplier; or (c) he abandons a construction project. N.D. Cent. Code § 43-07-02(3). A person "abandons" a construction project if he fails to start or complete the project by certain dates. N.D. Cent. Code § 43-07-02(3)(c). Of the three possible forms of construction fraud, the affidavit only states reasons to believe Mr. Morgan-Derosier may have abandoned projects. The affidavit states that Ruth Ann Halvorson paid Mr. Morgan-Derosier for landscaping projects in April 2020.[25] According to the affidavit, Mr. Morgan-Derosier had not started the work by September 2020. While these facts may establish probable cause to believe Mr. Morgan-Derosier committed construction fraud by abandoning projects, there is no probable cause to believe he did so before 15 October 2019.

The affidavit also does not articulate any reason to believe Mr. Morgan-Derosier operated a business without a license before 15 October 2019. The affidavit states Mr. Morgan-Derosier was prohibited from doing business in North Dakota by the 15 October 2019 order.[26] It also states that Det. Buzzo believed Mr. Morgan-Derosier "may still be conducting business" as of the date of the affidavit.[27] It does

---

[25] Def. Ex. 5 at 7–8, ¶ 13.
[26] *Id.* at 2, ¶ 5.
[27] *Id.*

14

not articulate any reason to believe that Mr. Morgan-Derosier did not have a license before October 2019. Without any explanation, there was no probable cause to believe any information created before that date would be evidence Mr. Morgan-Derosier operated a business without a license.

### iii. The warrant is not severable.

The Magistrate Judge recommends that if the Court finds the warrant was overbroad as to evidence created before 15 October 2019, that portion of the warrant can be severed from the remaining portion. The Court should reject this finding and hold that the warrant is not severable.

Although the Eighth Circuit has found that a partially overbroad warrant may be severed, it has not clearly explained when severance is appropriate. *See United States v. Coleman*, 909 F.3d 925, 931 (8th Cir. 2018); *United States v. Timley*, 443 F.3d 615, 622 (8th Cir. 2006). The Tenth Circuit has developed a multi-step process to determine whether to sever a warrant. *United States v. Suggs*, 998 F.3d 1125, 1138 (10th Cir. 2021). The court explained:

> First, we divide the warrant in a commonsense way. Then we examine the validity of each section. If at least one section passes constitutional muster—meaning it satisfies the probable cause and particularity requirements of the Fourth Amendment—we determine whether the valid parts are distinguishable from the invalid ones. When "each of the categories of items to be seized describes distinct subject matter in language not linked to language of other categories, and each valid category retains its significance when isolated from [the] rest of the warrant, then the valid portions may be severed from the warrant."

*Id.* (quoting *United States v. Sells*, 463 F.3d 1148, 1154–55 (10th Cir. 2006)) (citations omitted). Even when a warrant can be severed, severance is not

15

appropriate "if 'the invalid portions so predominate the warrant that the warrant in essence authorizes a general, exploratory rummaging in a person's belongings.'" *Id.* (quoting *Cassady v. Goering*, 567 F.3d 628, 638 (10th Cir. 2009)).

The unconstitutional portions of this warrant cannot be severed from the rest of the warrant. The first step of the analysis is to "divide the warrant in a commonsense way." *Suggs*, 998 F.3d at 1138. Here, there is no delineation in the parts of the warrant. Unlike the warrant in *Suggs*, the warrant for Mr. Morgan-Derosier's home was not divided at all. It was not split into subparts or bullet points by time. *See id.* Viewing the face of the warrant and affidavit, there is no way to distinguish between evidence that may be supported by probable cause, because it is in the right time frame, and evidence that is not supported by probable cause, because it predates the alleged offenses. Any attempts to sever the warrant would require the Court to re-write the warrant to include a time division that simply does not exist.

Because the warrant is not divisible at the first step, the Court should not move on to the other steps in the process. The Court should reject the Magistrate Judge's finding that the warrant was severable.

**B.    There was no probable cause nexus to believe evidence of business crimes would be found in "visual depictions" on Mr. Morgan-Derosier's electronic devices.**

The question of whether Det. Buzzo had probable cause to search Mr. Morgan-Derosier's image and video files is simple. The parties, and the Magistrate Judge, agree that if there is a probable cause nexus to search the files, it is found in

Paragraph 17 of Det. Buzzo's affidavit.[28] The parties disagree about whether that paragraph is sufficient to create the nexus.

Paragraph 17 states:

[¶17] Your affiant knows from training and experience that individuals can communicate and access and input information from many sources. Computers have revolutionized the way in which those sources and users interact. Computers have also revolutionized the way in which people can access and keep their records including personal, business, and financial documents and information. The development of computers and the Internet has greatly changed and added to the way in which people keep records. Computers have facilitated the ability of people to keep their records stored and hidden. Photographs, videos and other records that were previously stored in boxes are now collected as digital images and files that can be stored and maintained on electronic media, such as a digital storage device called a "Micro Secure Digital Card", that is smaller than a postage stamp. Computers and the Internet now aid and serve in the storage of files and communication between people, including customers.[29]

In that paragraph, the government points to one sentence: "Photographs, videos, and other records that were previously stored in boxes are now collected as digital images and files that can be stored and maintained on electronic media."[30]

The question is, therefore, whether Paragraph 17 is sufficient, in a fact-specific inquiry, to show that law enforcement had probable cause that Mr. Morgan-Derosier stored business records as images or videos. It is not.

---

[28] Def. Ex. 5 at 8–9; *see also* R&R at 35; Gov. Resp. Br. at 31; Gov. Post-Hrg. Br., Doc. 113 at 10–11.

[29] Def. Ex. 5 at 8–9.

[30] Gov. Resp. Br. at 31; (emphasizing "business, and financial documents," "Photographs, videos, and other records" and "digital images and files"); Gov. Post-Hrg. Br., Doc. 112 at 10–11 (emphasizing "Photographs, videos, and other records that were previously stored in boxes are now collected as <u>digital images</u>").

### i.   Paragraph 17 is wholly conclusory and does not provide a specific basis for probable cause.

Paragraph 17 is conclusory. "[A]n affidavit that is 'wholly conclusory' cannot establish probable cause." *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010). An affidavit is conclusory when it does not identify specific facts supporting probable cause, and the magistrate does not have an "independent basis for making the probable cause determination." *Id.* Paragraph 17 does not identify any facts from which a magistrate could make an independent decision that there was probable cause to search "visual depictions." Paragraph 17 assumes the existence of photographs and videos. It does not offer any explanation for why Mr. Morgan-Derosier would have visual depictions of his business records. It explains why any images Mr. Morgan-Derosier does have may be found on his computers, but it neglects to explain why Det. Buzzo thought Mr. Morgan-Derosier had any images in the first place.

Paragraph 17 focuses on how people generally behave, without establishing any reason to believe those behaviors are illegal or that Mr. Morgan-Derosier acted in conformity with those general behaviors. It states that "people" "keep their records stored and hidden" without giving any reason why Mr. Morgan-Derosier would have hidden his records. In fact, the opposite is true: the affidavit identifies several reasons to believe that Mr. Morgan-Derosier was not hiding his business activity because he did not believe the activity was illegal. As explained in the affidavit, Det. Buzzo knew that Mr. Morgan-Derosier believed the judicial order was not legitimate and that he was allowed to operate with the new business he had

registered with the North Dakota Secretary of State.[31] Det. Buzzo also knew that

Mr. Morgan-Derosier believed that he was justified in not paying Andrew Fox and

had explained his justification to the North Dakota Department of Labor and

Human Rights.[32] Thus, the affidavit did not identify any reason to believe Mr.

Morgan-Derosier hid his business records behind different file types or under

different names. Instead, it identified several reasons why Mr. Morgan-Derosier did

not believe he had to hide.

> **ii.    The affidavit does not explain what business records could be hidden in "visual depictions" on Mr. Morgan-Derosier's computers.**

Paragraph 17 does not identify what business records Det. Buzzo believed

Mr. Morgan-Derosier stored as "visual depictions." The government argues in its

briefing that image or video files could include a variety of business-related items.[33]

But this was not information provided to the issuing magistrate. Det. Buzzo's

affidavit does not identify any of these items as possible evidence. Nor does it

provide any specific reason to believe Mr. Morgan-Derosier stored his general

business records as images. Officers did not have any statements from employees

that Mr. Morgan-Derosier took photographs of ongoing projects. They did not have

any customers alleging that they had sent him photos or videos of their complaints.

The affidavit does not explain any reason why Mr. Morgan-Derosier would store

invoices as image files, rather than the QuickBooks files that generated those

---

[31] Def. Ex. 5 at 4–5, ¶ 9.
[32] *Id.* at 5–6, ¶¶ 10–12; Def. Ex. 4, Doc. 73-4.
[33] Gov. Resp. Br. at 30.

invoices. The affidavit does not explain any business-related travel during which Mr. Morgan-Derosier took photographs. Because these theories were not articulated in the affidavit or presented to the issuing magistrate, they cannot be the basis for probable cause. *See Saddler*, 19 F.4th at 1039.

The government's proposals for what kinds of images Mr. Morgan-Derosier could have had on his computers are speculative and not supported by any specific reason to believe those files existed. Additionally, they were not presented to the issuing magistrate when Det. Buzzo requested the warrant. These ideas cannot be used to establish a probable cause nexus between the suspected crimes and Mr. Morgan-Derosier's images and videos.

>            iii.    **A screenshot from another person's phone does not establish probable cause for police to search Mr. Morgan-Derosier's devices.**

The Magistrate Judge notes that Det. Buzzo's affidavit states that he received a screenshot of a text conversation between Mr. Morgan-Derosier and Andrew Fox.[34] The Magistrate Judge identifies this screenshot as an example of an image that could have been stored on Mr. Morgan-Derosier's computer devices.

This screenshot cannot establish probable cause for several reasons. First, the screenshot appears to have been taken by Mr. Fox, from his phone.[35] There is no

---

[34] R&R at 34–35.

[35] *See* Def. Ex. 5 at 6, ¶ 11 ("Your affiant advises he has also met with Andrew Fox on 9/4/20 and have [sic] been provided further information including screenshots of text messages, recordings of a conversation between he and Derosier, and a reply to a ND Department of Labor case filed by Andrew."); Gov. Ex. 10, Doc. 99-11 (showing screenshots of a text message conversation, taken from one phone in the conversation, in which the other phone has a contact name of "Nick").

reason to believe that Mr. Fox sent that screenshot to Mr. Morgan-Derosier. Second, there is no explanation for how or why the screenshot would have been transferred onto Mr. Morgan-Derosier's computers and/or external storage devices. A screenshot of a text message is an image taken on a phone. It may have been transferred from one phone to another, but there is no explanation for why it would have been transferred from a phone to a computer to a thumb drive. Third, this is another *post hoc* justification for probable cause. The affidavit itself never stated that the screenshot came from Mr. Morgan-Derosier, was likely to be on any of his computer devices, or that it was a basis to believe Mr. Morgan-Derosier possessed incriminating photos. The affidavit itself does not draw a line between this screenshot and probable cause to believe evidence of a crime could be found on Mr. Morgan-Derosier's devices.

A screenshot that Det. Buzzo received from Mr. Fox cannot be probable cause to search Mr. Morgan-Derosier's computer devices. There is no rational reason to think that Mr. Morgan-Derosier possessed the image in any form. It cannot establish a nexus between Det. Buzzo's reasons for believing Mr. Morgan-Derosier committed business crimes and Mr. Morgan-Derosier's image files.

> ### iv. There was no probable cause to believe Mr. Morgan-Derosier was hiding files because this was not a search for contraband.

The Magistrate Judge's comparison to *Summage* is not persuasive. In *Summage*, the defendant was accused of photographing and recording the sexual abuse of a mentally disabled adult. *United States v. Summage*, 481 F.3d 1075, 1076

(8th Cir. 2007). As the Magistrate Judge noted, "The Eighth Circuit found the warrant sufficiently particular because 'no indication was given regarding the nature of the format in which the sought-for video and photographs were created or stored' and therefore 'it was necessary to search a broad array of items for the relevant materials.'"[36] Thus, in *Summage*, law enforcement had a reason to think that certain types of files existed—videos and photographs. Officers were, therefore, able to search broad types of files to find those images. But here, to the extent law enforcement had a reason to think that certain types of files existed, those files were QuickBooks workbooks. Officers may have been entitled to search for files that could contain QuickBooks data. Yet, they had no specific reason to believe Mr. Morgan-Derosier had photographs of his business records.

Additionally, officers in *Summage* were looking for specific contraband: they were looking for photos and videos of the sexual abuse of a vulnerable individual. An affidavit can draw a probable cause nexus between contraband and hidden files. A person who possesses contraband wants to hide that evidence from discovery. But here, there was no probable cause to believe Mr. Morgan-Derosier possessed any contraband at all. The warrant was issued to search for business records. Business records are not contraband or illegal to possess. There was no reason for Mr. Morgan-Derosier to hide these documents if they were not illegal to possess and he did not think he had committed any crimes. There was no probable cause to believe Mr. Morgan-Derosier hid any of his files.

---

[36] R&R at 34.

**C.     The warrant was overbroad.**

In summary, the affidavit did not provide any reason to believe evidence of suspected crimes existed prior to 15 October 2019 or that Mr. Morgan-Derosier stored his business records in image or video formats. Nor did it provide any reason to believe that Mr. Morgan-Derosier hid his business records. That criminals generally may do these things is not probable cause. It is mere speculation.

> The warrant for Mr. Morgan-Derosier's electronic devices
>
> authorized the police to seize the entirety of the [electronic devices] and rummage through every conceivable bit of data, regardless of whether it bore any relevance whatsoever to the criminal activity at issue. Simply put, the warrant told the police to take everything, and they did. As such, the warrant was overbroad in every respect.

*Winn*, 79 F. Supp. 3d at 922. Without any limits to the type of data that could be seized, or when that data was created, the warrant was unconstitutionally overbroad.

The Magistrate Judge erred by finding there was a probable cause nexus between the alleged crimes and Mr. Morgan-Derosier's images and videos. The Court should reject the finding that the warrant was not overbroad.

**3.     The warrant was executed in an unreasonable manner.**

The Magistrate Judge found that officers executed the warrant reasonably. The Court should reject this finding. First, the Court should find that the warrant for business crimes was obtained as pretext to investigate Mr. Morgan-Derosier for child sexual abuse offenses. *But see United States v. Romo-Corrales*, 592 F.3d 915,

919 (8th Cir. 2010). Second, the Court should find that the execution of the warrant was unreasonable because officers searched beyond the scope of the warrant.

"Although how best to proceed in performing a search is generally left to the discretion of officers executing a warrant, possession of a search warrant does not give the executing officers a license to proceed in whatever manner suits their fancy." *Hummel-Jones v. Strope*, 25 F.3d 647, 650 (8th Cir. 1994). The search must be conducted reasonably. *Id.* "If the scope of [a] search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990).

Officers exceed the bounds of a search warrant if they interrupt a search authorized by a warrant to conduct a search that is not authorized. *United States v. Suing*, 712 F.3d 1209, 1212 (8th Cir. 2013). If officers are conducting a search for one form of contraband, and they find evidence of a totally unrelated kind of contraband, they are expected to stop the search and obtain a new warrant before they continue to search for the second form of contraband. *Id.*

Here, officers began searching for child sexual abuse materials while they were still at Mr. Morgan-Derosier's home. Before officers arrived at the home, they discussed Det. Freeman's prior cybertip investigation into Mr. Morgan-Derosier.[37] Once officers arrived at the home, Mr. Morgan-Derosier's roommate told SA Casetta there was a thumb drive with "images of boys" in the safe.[38] Based on that

---

[37] Hrg. Trans. Vol. II at 279.
[38] *Id.* at 281.

information, officers searched the safe and seized the Lexar thumb drive inside it.[39] In the same room, officers took photographs of diapers, even though they were not indicia of ownership or related to a landscaping business in any way.[40] After searching the bedroom, SA Casetta joined Det. Buzzo's interview of Mr. Morgan-Derosier.[41] SA Casetta specifically asked Mr. Morgan-Derosier about the diapers, and whether there was "any weird stuff" on Mr. Morgan-Derosier's computers.[42] From officers' focus on the bedroom safe and the possibility of "any weird stuff," it is clear that they were not looking for evidence of violation of a judicial order, contractor license required, or construction fraud. At Mr. Morgan-Derosier's home, officers were looking for evidence of child sexual abuse. This search exceeded the scope of the warrant.

At the very least, Det. Freeman exceeded the scope of the warrant when she opened an image file to search for CSAM. Before Det. Buzzo began investigating Mr. Morgan-Derosier's businesses, Det. Freeman had investigated a cybertip

---

[39] *Id.* at 389.

[40] Hrg. Trans. Vol. I, Doc. 110 at 99. Even if the Court finds that officers executed the search reasonably as to Mr. Morgan-Derosier's computer devices, it should still suppress evidence of the diapers. They were not named in the warrant as evidence to be searched or seized. They do not fall within the plain view exception because their incriminating nature was not immediately apparent. *See United States v. Mattox*, 27 F.4th 668, 673–74 (8th Cir. 2022) ("The Fourth Amendment permits an officer to seize an object without a warrant under the plain-view doctrine if '(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself.'" (quoting *United States v. Vinson*, 805 F.3d 1150, 1152 (8th Cir. 2015))).

[41] *Id.* at 113.

[42] Gov. Ex. 75, Doc. 99-75 at 31.

related to him.[43] She had investigated Mr. Morgan-Derosier a second time, when she received information from the Eagan, Minnesota, police department.[44] Det. Freeman was reminded of these investigations immediately before officers searched Mr. Morgan-Derosier's home.[45] At the pre-search briefing, officers were told that if they found evidence related to the cybertip, they would stop the search to apply for a new warrant.[46] Once at the search, Det. Freeman knew that Mr. Morgan-Derosier's roommate disclosed possible CSAM on a thumb drive.[47]

Once Det. Freeman had seized Mr. Morgan-Derosier's devices, she began to forensically search them, beginning with the Lexar thumb drive. When she first opened the drive, she saw a folder called "Mega."[48] Det. Freeman knew that Mega "is a cloud-based storage service."[49] She knew that Mega is used by people accused of CSAM offenses.[50] Det. Freeman suspected there was CSAM in the Mega folder.[51] So she opened the folder. Inside, she did not find QuickBooks workbooks or inventory spreadsheets or customer lists. She found images and one video.[52] Instead of leaving the folder to search somewhere likely to contain business records, Det. Freeman began opening images.[53] After Det. Freeman found one image of suspected

---

[43] Hrg. Trans. Vol. II at 259–62.

[44] *Id.* at 270–71.

[45] *Id.* at 278–79.

[46] *Id.* at 279.

[47] *Id.* at 281.

[48] *Id.* at 301.

[49] *Id.* at 302.

[50] *Id.* at 302–03.

[51] *Id.* at 304.

[52] *Id.* at 305.

[53] *Id.* at 306.

child sexual abuse, she opened another image, specifically to look for more contraband.[54]

Det. Freeman testified that she opened an image to look for child sexual abuse material.[55] She was not looking for evidence of business crimes. She did not stop and get a warrant before conducting the search. Det. Freeman's search for child sexual abuse materials exceeded the scope of the search authorized by the warrant. *Suing*, 712 F.3d at 1212.

The search here exceeded the scope of the warrant. The Court should reject the Magistrate Judge's finding that such a search was reasonable.

### 4.   The good faith exception cannot justify the search.

Mr. Morgan-Derosier objects to the Magistrate Judge's recommendation that if this Court finds a Fourth Amendment violation, the good faith exception applies. Evidence illegally obtained under the Fourth Amendment should ordinarily be suppressed unless a court applies the good faith exception. *See United States v. Leon*, 468 U.S. 897, 906 (1984). Under the good faith exception "if an officer (1) obtains a search warrant (2) that appears properly issued on its face and (3) executes it within its scope and with objective good faith reliance on the warrant's validity, then a defect in the probable cause analysis undergirding that warrant will not cause evidence to be suppressed." *United States v. Eggerson*, 999 F.3d 1121,

---

[54] *Id.* at 307.
[55] *Id.*

1124 (8th Cir. 2021); *see Leon*, 468 U.S. at 922. Under *Leon*, there are four instances

where an officer's reliance would be unreasonable:

1. when the affidavit or testimony supporting the warrant
   contained a false statement made knowingly and
   intentionally or with reckless disregard for its truth, thus
   misleading the issuing judge;

2. when the issuing judge wholly abandoned his judicial role
   in issuing the warrant;

3. when the affidavit in support of the warrant is so lacking
   in indicia of probable cause as to render official belief in
   its existence entirely unreasonable*;* and

4. when the warrant is so facially deficient that no police
   officer could reasonably presume the warrant to be valid.

*United States v. Good Voice*, 602 F. Supp. 3d 1150, 1170 (D.S.D. 2022) (cleaned up).

All four apply here, but the Court need only find one to suppress. *See United States*

*v. Zimmerman*, 277 F.3d 426, 437 (3d Cir. 2002). Mr. Morgan-Derosier raised those

issues in his post-hearing brief.[56] In finding good faith, the Magistrate Judge did

not address Mr. Morgan-Derosier's argument except to say that Mr. Morgan-

Derosier believed the business warrant was a ruse to search for CSAM.[57] While

---

[56] Doc. 109 at 7–14.

[57] R&R at 42. The Magistrate Judge summarized Mr. Morgan-Derosier's argument
that Det. Buzzo copied boilerplate language from a CSAM warrant into this
warrant, which demonstrates Det. Buzzo's investigation was a "stalking horse" for a
CSAM investigation. *See* Doc. 109 at 7–14. The Magistrate Judge noted that at first
blush it appeared the business investigation was a pretext, but the context
surrounding the execution of the warrant dispelled Mr. Morgan-Derosier's claim.
But the execution has nothing to do with the warrant's use of CSAM language. That
language misled the issuing magistrate to authorize a warrant beyond the scope of
Det. Buzzo's probable cause for business records show a lack of good faith. *See infra*
at 31–32.

true, Mr. Morgan-Derosier articulated other reasons the good faith exception should not apply.[58] To avoid repeating the same points, he incorporates those arguments into this objection. But the Report and Recommendation raises two points worth addressing here: the reliance on a computer-generated warrant and the affidavit's misleading promise to search the entirety of the devices through scientific procedures.

The Magistrate Judge concluded officers reasonably relied on the warrant because it was composed through an electronic portal.[59] This assumes any errors produced by a computer-generated warrant cannot be attributed to Det. Buzzo and other executing officers. But the error was human. According to Det. Buzzo, the warrant portal limited the types of evidence he could seek. For example, he said he could not specify the crimes under investigation (*i.e.*, violation of a judicial order, contractor license required, or construction fraud).[60] So, he was left to select the types of evidence available (*i.e.*, evidence of a crime, contraband, fruits of crime, or other items illegal possessed).[61] Det. Buzzo selected all four categories. He could have, for example, selected just "evidence of a crime." There was no evidence to suggest the devices had contraband, fruits of crime, or other items illegal possessed. Business records are not illegal. But warrants for CSAM typically involve several categories because CSAM is, by nature, contraband, and, therefore, illegal to

---

[58] *See* Doc. 109 at 7–14.
[59] *Id.*
[60] Hrg. Trans. Vol. I at 74–75.
[61] *See id.*

possess. And significantly, before seeking the warrant, Det. Buzzo obtained a search warrant for bank records.[62] Using the same warrant system, he limited his request for bank records to just "evidence of a crime."[63] Those crimes, like the warrant at issue, were for violation of a judicial order, contractor license required, or construction fraud.[64] This indicates Det. Buzzo knew he was asking to search for evidence beyond Mr. Morgan-Derosier's business operation, and he used the computer-generated warrant system to do so. The Magistrate Judge's conclusion that Det. Buzzo reasonably relied on deficiencies in a computer-generated warrant finds no support in the record.

Moreover, the warrant stands on its own. It is facially deficient. The law is settled in this respect: general reference to criminal activity is constitutionally deficient. *See In re Grand Jury Proc.*, 716 F.2d 493, 497 (8th Cir. 1983); *United States v. Bridges*, 344 F.3d 1010, 1016 (9th Cir. 2003) (citing *Marron*, 275 U.S. at 196). That rule is imputed to a reasonable officer. *See United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) (stating "officers have an obligation to understand the laws that they are entrusted with enforcing"). Therefore, no officer could have reasonably relied on the facially deficient warrant. That a computer—not the issuing magistrate or applying officer—authored the warrant is no excuse. The Magistrate Judge cites no authority to conclude that a computer-generated warrant relieves executing officers from reviewing the warrant's content.

---

[62] *Id*. at 53.
[63] Def. Ex. 17, Doc. 99-88.
[64] *See id*. at 8.

Additionally, the Court should not apply the good faith exception because Det. Buzzo's affidavit misled the issuing magistrate by claiming the complexity of a computer search required an unlimited search with no limiting procedures. In his affidavit, Det. Buzzo assured the issuing magistrate searching computer systems is a "highly technical process requiring expert skill and a properly controlled environment."[65] He added that "computer experts" employ "exacting scientific procedures designed to protect the integrity of the evidence."[66] But Det. Freeman was not a "computer expert." While she may have been her department's only "computer forensics officer," she lacked qualifications to engage in the exacting scientific demands Det. Buzzo claimed were necessary. And Det. Freeman did not use scientific procedures to protect the integrity of the evidence on the devices. One of the most basic techniques involves using a device called a write blocker that prevents computers from altering data on storage devices.[67] In rushing to search for CSAM, Det. Freeman did not use a write blocker before rummaging through the Lexar thumb drive.[68] Afterwards, she left the flash drive connected to her computer.[69] Her computer then ran an update, altering data on the flash drive.[70] Neglecting to use a write blocker, Det. Freeman did not search in a "properly controlled environment," she did not protect the integrity of the devices, and she did

---

[65] Def. Ex. 5, ¶ 20.
[66] *Id.*
[67] *See* Hrg. Trans. Vol. II at 403.
[68] *See id.* at 292.
[69] *See id.* at 362, 401–402, 411.
[70] *Id.* at 296–298.

not use exacting scientific procedures. Instead, Det. Freeman rummaged through a folder called "Mega," an encrypted cloud-based storage system used by CSAM traffickers.[71]

Det. Buzzo misled the issuing magistrate by claiming officers needed discretion to search every part of every device based on scientific procedures that were later ignored. As a result, the warrant gave officers access to devices that went beyond business records and beyond probable cause.

Good faith cannot apply here. As stated in Mr. Morgan-Derosier's post-hearing brief, the warrant lacked particularity and was overbroad to a degree for which no reasonable officer would rely on it to search for business records. For the same reasons, by issuing such a warrant, the magistrate abandoned her judicial role. *See Winn*, 79 F. Supp. 3d at 924 (finding it impossible to conclude the issuing magistrate adequately reviewed the warrant application signing off on a facially overbroad nature of list of items to be searched and "its utter disconnect from the type of crime at issue and the facts alleged"). Because both the warrant and search were illegal, and because the good faith exception does not apply, suppression is required.

**5.    The inevitable discovery doctrine does not apply.**

Inevitable discovery cannot save the evidence in this case. The Magistrate Judge held that if the warrant was invalid, or the search was unreasonable, then the evidence in this case would not have been found without the constitutional

---

[71] *Id.* at 302–03, 342, 382.

violation. The Court should accept this finding. The evidence in this case would not have been discovered by lawful means, without police misconduct.

The inevitable discovery doctrine states that illegally obtained evidence will not be suppressed if "the evidence would have been acquired lawfully but for the constitutional violation." *United States v. Baez*, 983 F.3d 1029, 1038 (8th Cir. 2020). For this doctrine to apply, the government must identify some lawful means by which law enforcement would have inevitably discovered the evidence. The government has not done so. The government's theory for inevitable discovery requires that officers would have inevitably searched some of Mr. Morgan-Derosier's computer devices, including all "visual depictions."[72] But that is not true. For the reasons previously articulated, officers did not have probable cause to search any of these files. Officers would not have inevitably searched the images because they could not do so without violating the Constitution.

Similarly, the plain view doctrine does not apply to this case. The plain view doctrine requires that "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Mattox*, 27 F.4th at 673–74. The government's arguments on plain view require that officers did not violate the Fourth Amendment in searching Mr. Morgan-Derosier's computer devices. As argued extensively, they did. Without this constitutional violation, officers would not have had access to Mr. Morgan-Derosier's computer devices and

---

[72] Gov. Sur-reply, Doc. 88 at 6.

would not have been allowed to search them. Without lawful permission, plain view does not apply.

Officers did not have any legal means to search Mr. Morgan-Derosier's computer devices. The search was based solely on the unconstitutional warrant. Additionally, the search was conducted unreasonably. The inevitable discovery doctrine does not apply.

## 6.   Conclusion

Computers and cell phones are unlike any other object that could be searched by law enforcement. *See Riley*, 573 U.S. at 393. A search of these devices presents a far greater intrusion on a person's privacy than the search of just about any other item. *See id.* at 393–94. "The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet." *Id.* at 394. The heightened invasion of privacy requires heightened Fourth Amendment protections.

The government argues the contrary: that because computers contain such vast amounts of information, officers must be given broad discretion to search every nook and cranny for the possibility of evidence. But this defies the purposes of the Fourth Amendment. As the Supreme Court explained in *Riley*,

> [T]he Fourth Amendment was the founding generation's response to the reviled "general warrants" and "writs of assistance" of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity. Opposition to such searches was in fact one of the driving forces behind the Revolution itself. In 1761, the patriot James Otis delivered a speech in

34

> Boston denouncing the use of writs of assistance. A young John Adams
> was there, and he would later write that "[e]very man of a crowded
> audience appeared to me to go away, as I did, ready to take arms
> against writs of assistance." 10 Works of John Adams 247–248 (C.
> Adams ed. 1856). According to Adams, Otis's speech was "the first
> scene of the first act of opposition to the arbitrary claims of Great
> Britain. Then and there the child Independence was born." *Id.*, at 248
> (quoted in *Boyd v. United States*, 116 U.S. 616, 625, 6 S.Ct. 524, 29
> L.Ed. 746 (1886)).

*Id.* at 403. Because computers are so broad, and contain so much information,

searches of them require more restrictions, not fewer.

The Court should reject the Magistrate Judge's Report and Recommendation.

The search was unconstitutional, and the evidence must be suppressed.

Dated this 12th day of July, 2023.

Respectfully submitted,

JASON J. TUPMAN
Federal Public Defender
By:

 */s/   Christopher P. Bellmore*
Christopher P. Bellmore
Anne M. Carter
Assistant Federal Public Defenders
Attorneys for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
112 Roberts Street North, Suite 200
Fargo, ND 58102
Telephone: 701-239-5111; Facsimile: 701-239-5098
filinguser_SDND@fd.org